Richardson, J.
dissenting. The rule of law, as heretofore well established, and I might say, inveterate in practice, is this, that where a note is indorsed after it has become due, or, what is the same, before due, but with notice from the maker of his defence against the note, the in-dorsee takes the note upon the responsibility of the indorser ; and the maker is let in to make the same defence against the indorsee, that he could have made against the original payee. And if such defence should be established, the in-dorsee’s sole resort is against the payee, upon whose responsibility the note so dishonored had been taken. Past due, or notice, takes from the note the peculiar character of negotiable, commercial paper, and places the note on the common law applicable to unnegotiable notes, bonds, and other demands that have been assigned.
Accordingly, in all such cases, the maker of the dishonored note has been always permitted to make his full defence as if the original payee had sued ; and the only question was, what was the true balance of indebtednesss of the maker to the payee ? and for this alone, such indorsee could take a verdict. True, it has been sometimes suggested that an intermediate or compromise rule might be adopted for such cases — that is, to restrict the discount to matter connected with the note. But this is neither commercial, nor common law, and least of all, statute law. For our- *552 Act lets iu “ any accompt, reckoning, demand, cause, matter or thing,” by way oí discount.
It is under this Act, the good sense of which is to abridge divers litigation, that the maker of a note past due, or when he has fairly put the indorsee on his guard, is, ipso facto, let into, as is so commonly and well expressed, “ all the equities” he held against the original payee. And accordingly, the apt suggestion of an intermediate rule— but better termed, for it will be, literally, a sliding scale for the maker’s equities, according to the name of the plaintiff — has hot heretofore obtained foothold at law.
If the rule I have first discussed be correct, then Sond-ley ought to have a new trial, on the third ground of his appeal ; that is, for misdirection to the jury in this, that the discount ought to have grown out of the note.
Having shewn what I consider the true sealed measure of the equitable defence in all such cases, whether against the payee or such indorsee, the way is opened for the just consideration of the point more expressly ruled in the case against Sondley; to wit: that the note set up in discount, not being due at the time when Wingard & Muller’s note became due, the note having before passed into the hands of the plaintiff, as indorsee, this discount could not avail the defendant against the indorsee.
It is not questioned that such a discount would be good against the payee, McCully. The rule is settled, that if the discount has become due before the action is brought, that is enough — because, at that date, the legal balance is to be struck ; Shepherd vs. Turner, 3 McC. 249. But if this be the settled law, it follows irresistibly, from the premises first laid down, and which, I do urge, cannot be overturned, that the discount must be equally good against such in-dorsee with notice, because he stands, by our adjudications, in the stead, place, and rights of the payee, and no more — that is, to the extent of the note such indorsee has put in suit.
There is no getting such indorsee out of the rule, or denying it to the maker, unless we adopt the. intermediate rule, against the possible introduction of which I write this dissent, *553 bat which will, inevitably, gain one advance, if MeCully’s note be rejected as a discount against McAlpin, indorsee, when it was good as against the original payee.
That such a consequence, so as to ripen into a general intermediate rule for different applications of the equities of the maker, is not foreseen by the court, I take for granted. Such innovation in law would be too great. And if so, the argument and decision turn on a small point; to wit: whether, when McAlpin bought the defendants’ note, any demand of the defendants was actually due by the payee, McCully. And I grant that after the note had been passed to McAlpin, Wingard & Muller could not acquire and make up new demands against McCully, in order to set them off against McAlpin, e. g. as by selling goods to McCully. This would be a fraud upon the in-dorsee. But such is not the character of this discount. It consisted in McCully’s note, at the time of the transfer to McAlpin, and made known to him; and it was a debt acknowledged in presentí for value received, and made payable hi futuro; that distinction, therefore, does not apply to the case.
But if this be the whole ground of the decision, that is, that there was no existing debt by McCully to Wingard & Muller, at the time of the indorsement, the meaning of money due now, for value received, but payable in futuro, is to be interpreted; and my exposition is, that debitum in presentí is the law of the contract; it is debt ; and sol-vendum in futuro refers to the remedy. It is the mere lex fori, and governs the time of the suit at law only. But as to the debt, the moment the consideration was received by McCully, the debt accrued solvendum in futuro. The discount, therefore, was contemporaneous with the notice of the defence, and with the indorsement of Wingard <fe Muller’s note to the plaintiff, McAlpin. It was a good discount.
It follows, therefore, that Wingard tfe Muller ought to hold their verdict. But the verdict against Sondley ought to be set aside, for misdirection in law in the charge of the Judge, upon two grounds ; first, upon restricting the dis *554 count to matter growing out of the note ; and secondly, by the error of considering MeCully’s note as a, discount accruing after Wingard & Muller’s note had been indorsed to. the plaintiff, Me Alpin. '